[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 31, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14403

_____

D. C. Docket No. 03-00625-CV-S

PROFESSIONAL HELICOPTER PILOTS
ASSOCIATION, OFFICE AND PROFESSIONAL
EMPLOYEES INTERNATIONAL UNION, LOCAL
102,

Plaintiff-Counter-
Defendant-Appellant,

versus

LEAR SIEGLER SERVICES, INC.,

Defendant-Appellee,

GUADALUPE HERNANDEZ,
ROBERT BERNAL,

Defendants-Counter-
Claimants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 31, 2005)

Before BIRCH, HULL and BOWMAN[*], Circuit Judges.

PER CURIAM:

After careful study of the parties' briefs and hearing oral argument on the issue of whether the State of Alabama's right-to-work law would apply to two non-Union workers employed at Fort Tucker, Alabama, we are persuaded that the district court's judgment should be AFFIRMED. Moreover, because we find that the 26 July 2004 opinion of the district court, <u>Professional Helicopter Pilots Association, Office and Professional Employees International Union, Local 102 v. Lear Siegler Services, Inc.</u>, 326 F. Supp. 2d 1305 (M.D. Ala. 2004), accurately and artfully states the facts and law on the issues presented, we hereby annex the same and adopt it as the opinion of this court.

Additionally, we are not persuaded that we should award attorneys' fees on appeal as requested by the appellees.[1] We begin, as we must, by acknowledging that § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, does not authorize attorneys' fees. <u>See</u> <u>Varnes v. Local 91, Glass Bottle Blowers Ass'n of the U.S. & Can.</u>, 674 F.2d 1365, 1369 (11th Cir. 1982). Therefore, the

---

[*]Honorable Pasco Bowman, II, United States Circuit Judge for the Eighth Circuit, sitting by designation.

[1]Appellant's motion to strike certain portions of Appellees' brief addressing attorneys fees, previously carried with the case, is hereby DENIED. The only attorneys' fees issue before us are those fees for the appellate work on this case.

2

American rule—that each party bears its own attorneys' fees—presumptively applies.  See Chambers v. NASCO, Inc., 501 U.S. 32, 45, 111 S. Ct. 2123, 2133 (1991).

However, equitable exceptions to the American rule have been created.  See id. (listing three equitable grounds permitting fee shifting as punishment); Varnes, 674 F.2d at 1639 (granting attorneys' fees "if a party violates § 301(a) in bad faith, vexatiously, wantonly or for oppressive reasons").  Another exception, found in labor cases, is the "common benefit" rule, which requires a union to pay attorneys' fees when litigation renders a benefit to union members who are not a part of the lawsuit.  See Mims v. Teamsters Local No. 728, 821 F.2d 1568, 1571 (11th Cir. 1987); Cole v. Hall, 462 F.2d 777, 780-81 (2d Cir. 1972), aff'd, Hall v. Cole, 412 U.S. 1, 6, 93 S. Ct. 1943, 1947 (1973).  Appellees argue that they fall within this exception.

We find, however, that the requested award falls outside of the rationale for the "common benefit" exception to the American rule.  The "common benefit" rule is not simply a fee-shifting tool.  Its purpose is to share, among an organization's members, the costs of self-improvement.  See Hall, 412 U.S. at 8, 93 S. Ct. at 1948 (discussing the prospect of increased democracy, as promised by the labor law at issue, as the reason for applying the exception).  The focus in the cases cited in the

previous paragraph was on making unions operate better from the members'

perspective, and, in all of the cited cases, the plaintiffs were vindicating a right

promised to union members under federal labor law. See, e.g., id. The rationale

was that, because all the members benefitted and because their dues collectively

fund the organization, making the union pay spread the cost over all the members.

E.g., id. at 9, 93 S. Ct. at 1948 (observing that having the union treasury pay the

litigation expenses shifts the costs to the class who benefitted and who would have

had to pay to have the right vindicated).

Two distinctions preclude application of the exception in this case. First,

there is not a benefit to the union members: no more fully assured right accrues for

members of the union as a result of our decision on the merits. The relevant

question is whether a person who joins the union after this decision would be better

off than someone who was a member before the decision. In this case, workers at

Cairns and Shell Fields will be able to leave the union and keep their jobs; thus, the

benefit they receive is that they can continue to work and no longer have to pay

union dues. They are then, however, no longer in the union, and those who do

remain will not enjoy any benefit of the decision.[2]

_____

[2] The distinction relevant to this case is not whether the law is federal or state, nor is it a
value judgment among federal laws, as appellees argue. We do not hold that the exception
applies only to the LMRDA, the federal law at stake in Hall, or that the state labor law is
lacking. However, in the context of this exception in the labor setting, the benefit being litigated

Second, not everyone in the union, Local 102, is benefitted by this decision, because the union members on Main Post, where there is exclusive federal authority, will not be able to opt out. Thus, if Local 102 were to pay, all of the Main Post members and those members from Cairns and Shell Fields who choose to remain would be assessed with the financial burden of a lawsuit that has not vindicated any right for them; that is, for union members. Consequently, the "common benefit" exception does not apply, and the American rule does. Accordingly, we **AFFIRM** the judgment of the district court and **DENY** the appellees' request for attorneys' fees on appeal.

---

must enhance the functionality of the labor union. Thus, like in the other "common benefit" cases, it must be the judgment of the court that the benefit accrued to the general membership with regard to the administration or governance of the union as a result of vindicating a statutory right. The union does not have to pay merely because some third party received a benefit as a result of the litigation.